UNITED STATES of America ex rel.
Robert J. WARD, Petitioner-
Appellant,

v.

Vincent R. MANCUSI, Warden of Attica
State Prison, Attica, New York,
Respondent-Appellee.

No. 628, Docket 31832.

United States Court of Appeals
Second Circuit.

Argued June 9, 1969.

Decided July 24, 1969.

Bruce K. Carpenter, Buffalo, N. Y. (The Legal Aid Bureau of Buffalo, Inc., Buffalo, N. Y., on the brief), for appellant.

Robert S. Hammer, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen. and Philip Kahaner, Asst. Atty. Gen., on the brief), for appellee.

Before MOORE, SMITH and ANDERSON, Circuit Judges.

MOORE, Circuit Judge:

Robert J. Ward (appellant) appeals from an order of the United States District Court denying, without a hearing, his petition for a writ of habeas corpus. Appellant was convicted of manslaughter in the first degree for causing the death of his wife with a shotgun and sentenced to imprisonment for 10 to 20 years on March 30, 1955. The question presented here is the voluntariness of statements made by Ward to the police on the second day of his interrogation. The same issue was litigated at his trial, and a subsequent appeal from the judg-

ment of conviction was dismissed for want of prosecution. People v. Ward, 286 App.Div. 1143, 145 N.Y.S.2d 447 (1955).

A post-conviction *Huntley* hearing was held on the issue of the voluntariness of appellant's statements to the police. People v. Huntley, 15 N.Y.2d 72, 255 N. Y.S.2d 838, 204 N.E.2d 179 (1965), implementing Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). On September 13, 1965 Justice Kronenberg, in the Supreme Court, Niagara County denied appellant relief and found that the statements in question were voluntarily made. People v. Ward, 26 A.D.2d 911, 275 N.Y.S.2d 376 (4th Dept. 1966). Leave to appeal to the New York Court of Appeals was denied by Chief Judge Desmond on December 9, 1966.

Based on the record of the *Huntley* hearing and the briefs of the parties in the Appellate Division, the court below found that there was no need for a further hearing, and accepted the finding of Justice Kronenberg that the statements in question were made voluntarily.

Ward was indicted for first degree murder but the jury returned a verdict of manslaughter in the first degree. Manslaughter in the first degree is defined by former New York Penal Law, McKinneys' Consol.Laws, c. 40, § 1050 (2) as homicide committed "[i]n the heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon." The challenged statements tend to establish the "heat of passion" element because in them Ward admitted to having had an argument with his wife just prior to the shooting. He contends that these statements were involuntary (1) because his will was overborne by his interrogators and (2) because he was not able to see his attorney and father during the first interrogation at the stationhouse in Niagara Falls.

■ Since judgment as to legal voluntariness is drawn from the "totality of the relevant circumstances," Culombe v. Connecticut, 367 U.S. 568, 606, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961), it is necessary to set out the facts in some detail. There were no witnesses to the killing, which occurred in appellant's home sometime after 4:00 p.m. on February 1, 1955. When the police arrived, appellant was there and admitted he had shot and killed his wife. These statements are conceded to be spontaneous and voluntary. Appellant maintained that the shooting was accidental.

He was thereafter brought to the Niagara Falls police station and interrogated for approximately four hours, from 7:30 p. m. to 11:30 p. m. Present at the interrogation were five police officers, two assistant district attorneys and a stenographer. But nothing of an inculpatory nature was produced to add to his spontaneous statements when the police arrived at his home that he had accidentally shot and killed his wife.

While the interrogation was under way, appellant's father and an attorney, whom his father had called arrived at the stationhouse and waited in the hall. Although appellant's father made a request to see him, he was told that they could not see him at that time since he was being questioned (Tr. 185). At the conclusion of the interview with the officers and the assistant district attorneys, Ward conferred with his father and the attorney and was advised by them to cooperate with the police and take a lie detector test the next day as the police had suggested. His request to be permitted to go home at night was denied and he was thereafter detained in jail overnight.

At the time appellant's father and the attorney saw appellant, appellant indicated to them that he was ill with a stomach ailment which he had had for nearly a day. In fact, appellant, who worked the midnight shift, left his job early at 2:30 a.m. February 1st because he felt sick to his stomach. On the conclusion of the interview with the police, appellant was examined by a medical doctor and given medication to relieve

his discomfort. Although food was repeatedly offered to him during the interviewing, he refused it but did accept coffee.

Appellant also spent a restless night in his cell and did not get very much sleep. He complained that the turnkey kept rousing him and pestering him during the course of the night to make sure he was not seriously sick. But he conceded that he was not asleep at all when the turnkey came around.

The next morning, appellant was given some more medication to relieve his stomach cramps and was taken from the Niagara Falls Police Station to Buffalo where two lie-detector tests were administered to him. These tests, one hour each, were separated by a two-hour lunch period. During the course of the tests his story about the accidental nature of the shooting began to crumble. Whereas before he maintained that he did not know the gun was loaded, he now admitted for the first time that he had loaded the weapon himself shortly before the shooting. He also indicated that he and his wife had an argument before the fatal incident and what the substance of that argument was. Other statements of an inculpatory nature, contradicting what he had previously told the police, were elicited from him and introduced at his trial.

█ Since Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), are not retroactive, the failure to warn appellant of his right to counsel and his right to remain silent at the outset of both interrogations is only one factor in considering the voluntariness of the statements, Davis v. North Carolina, 384 U.S. 737, 740, 86 S.Ct. 1761, 16 L. Ed.2d 895 (1966), but by no means decisive. The issue to be determined is whether statements appellant made, considering the "totality of the circumstances," were a product of an overborne will. Justice Kronenberg, after a concededly full and fair hearing, found that Ward's statements were voluntary.

█ While it is true that the testimony indicates that appellant's father made a request to the desk officer to see his son during the interrogation and the request was denied (Tr. 185), appellant's father and the lawyer, who came to the stationhouse separately, did not arrive at the police station until the interrogation was nearly over (Tr. 183–185). Since no inculpatory statements were elicited from the appellant during that period, he was not hurt by the slight delay in seeing his father. Furthermore, subsequent to the interview he had a full opportunity to meet and consult with his father and the lawyer. They talked with appellant for slightly under an hour and recommended to him that he cooperate fully with the police and take the lie-detector test the next day in Buffalo which he had already agreed to take. Thus the fact that appellant's father and an attorney were not able to see him immediately on their arrival at the stationhouse cannot be found to have adversely affected the voluntary nature of appellant's statements made the following day in Buffalo. The coercive atmosphere present in Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L. Ed.2d 513 (1963), is totally absent here.

██ The physical condition of the appellant during interrogation is a relevant factor in determining whether statements were voluntarily made. See Davis v. North Carolina, supra. Although appellant had not eaten a great deal over a 24-hour period, he was offered food and repeatedly refused the offers except for coffee. As to his stomach cramps, he was given adequate medical attention and medication when he needed it to relieve both his nerves and his discomfort. After an examination and an injection administered by a doctor, he never thereafter complained that the medication was ineffectual. Under the circumstances, it seems that the police did all they could reasonably be expected to do. In regard to the lack of sleep, appellant admitted that he had slept during the day prior to the shooting (Tr. 616–617) and that he worked

the night shift. He was therefore accustomed to not sleeping from midnight to the morning hours. Furthermore, he also testified that when the turnkey came around to see if he was all right, he "wasn't asleep at all" (Tr. 231). Additionally, questioning during the lie-detector tests was restricted to only an hour each time and there was a lengthy two-hour break for lunch period between the tests. Viewing the "totality of the circumstances," it is concluded that statements given by appellant on the second day of interrogation were voluntarily made and not the product of an overborne will.

Affirmed.